The case on the docket is 516-0135, Eagle v. Willie Williams. You may proceed. May it please the Court, Counsel, Assistant Apollo Defender, and Sonoma on behalf of Willie Williams. Mr. Williams argued two matters on appeal. The first issue is that his plea was not entered knowing that he called the number voluntarily. And the second issue is that the trial court abused its discretion where it found him conditionally fit. The focus today will be on the second argument. The issue of fitness is one of the constitutional dimension, and here the record does not show an affirmative exercise of judicial discretion. Thus, the problem before this Court is whether the trial court abused its discretion in two ways. First, by making a conditional finding of fitness, which was unauthorized by statute. And second, by later admitting that the original issuance of that conditional fitness finding was error, but then ultimately denying Mr. Williams' motion to withdraw guilty plea and vacate sentence, where the Court indicated that that provisional language, that conditional language, while it was confusing in surplusage, was not necessary to support its finding of fitness. As will be discussed today, the record rebutts the Court's finding because at every turn, the parties, the experts, and the Court itself repeatedly discussed how imperative that medication was for Mr. Williams. And further, at that motion to withdraw guilty plea and vacate sentence hearing, he argued and pointed out that he had previously told the Court that he had discontinued his medication for over two years after entering his guilty plea. And at that point, there's no dispute that that conditional fitness order was in place. A review of the facts are necessary here because in 2010, Mr. Williams was initially charged with home invasion and theft and then subsequently charged with first-degree murder, three counts of first-degree murder. His case lasted about six years in the trial court. And during that pendency of that case, he was represented by eight different attorneys. Of the eight, at least six expressed concern over his fitness, his fitness to assist in his defense. And accordingly, Mr. Williams was found fit or unfit and fit twice prior to entering his guilty plea and a third time post-plea where he was found unfit and unfit. Two of the three findings of fitness were conditional fitness findings. So they both hinge on the fact that Mr. Williams must be medicated. It's also notable that throughout the pendency of the case, the trial court repeatedly expressed its concerns of fitness. For example, at one point asked the parties, I mean, what's expected to change while he's in DHS? And the parties indicated, or at least the plea council indicated that the meditation was going to do the trick. The medication would make him less paranoid, more manageable, more cooperative. But no one had any other suggestions than the medication. The court at one point also says perhaps Mr. Williams is the best one to know his condition and that he could almost, you know, turn his fitness on and off. But that numerous people told him or told the court numerous times that medication was essential, was so essential and so compelling. Or, right, leave it. But at the time of the plea, the court went through some extensive questions about whether he was aware of what was going on and if he knew what he was doing and what his options were. And at that time found him to be capable of assisting his own defense in making that plea, correct? So at the guilty plea hearing, Your Honor? Yes. That's correct. And I think the issue here is that Mr. Williams stated after he pled guilty he stopped taking the medication. And the second argument deals with the fact that this is a conditional fitness finding that's in place. And that conditional fitness finding is that he's only fit provided he be on that medication, a Lanzaparin. So the fact that he stated on the record repeatedly that he wasn't taking his medication, that he didn't want it, he no longer was taking it, he hadn't taken it for a long period of time, this shows that because that conditional fitness order was in place, which is unauthorized by statute, now we have this extra problem where he says that he wasn't medicated. And that's where we... He was objecting to the medication based on religious basis. That's correct, Your Honor. It seems ironic that he now is... first he doesn't want it because of religious purposes, and then now he's arguing that he wasn't medicated. That's correct, Your Honor, because he's arguing for that, but he's found unfit, right? So he's making all these arguments against his medication, but the finding is that he wasn't fit when he made these arguments. And that once he is medicated, as the trial court notes repeatedly, Mr. Williams on medication is cooperative, is understanding, is manageable, and Mr. Williams not on medication is hostile. He's argumentative. He's not manageable. He's not understanding. He's not working with this attorney or the court during the proceedings. So this argument that he's making is while he's unfit. So the issue here is kind of twofold. First, the trial court makes this fitness finding that's not authorized by statute. And as the Jones court in the third district... I believe Jones court in the third district is highly instructive here. There it was the same issue. The trial court found that the defendant was only fit on two medications. And the Jones, the reviewing court in Jones, the third district, found that that was a conditional fitness order that wasn't authorized, and therefore the court didn't exercise its discretion properly. The second issue that the court addressed is what appears here. When the defendant is no longer on medication, then what? Then the converse is true, that the defendant is no longer fit. Are we allowed to make that presumption? Well, that's the question here, though, is he claimed that he or he pled guilty. And from that point on, I guess in subsequent proceedings, he has stated that he wasn't taking medication, that he's been off medication. And the trial court even questioned Mr. Williams at one point, saying, how long have you been off medication? And he says, since the time of the guilty plea. So at that point, at least the sentencing hearing, there's definitely a doubt that he was fit at the sentencing hearing. So we have. I guess I'm having trouble. How do we make that jump if he's answering the questions properly and responding appropriately to the court? Your Honor, this case is definitely a little difficult in the fact that post-plea, with his post-plea attorney, they actually make that argument that Mr. Williams was misdiagnosed, that he should have never been on medication in the first place. That doesn't override the fact that there was a finding of unfitness and fitness and unfitness and fitness. Once he's unfit, only the trial court can make that determination that he's fit. So here we have a case where there's a conditional order saying that he's only fit with medication. There's an assertion, at least Mr. Williams makes that assertion numerous times, that he wasn't taking the medication. And that's the problem in Jones that the court was trying to address, that if you make these conditional fitness findings, then these problems arise. That's why that's not allowed by statute. And we know there's no dispute about that conditional fitness. Even the trial court admits it in the motion to withdraw guilty plea and vacate sentence hearing. The trial court says, I did err. Pursuant to Jones, I did err. But it was merely surplusage. It wasn't necessary. But the record rebuts that. If this court reviews the entire record here, the trial court and the parties and the experts were completely on the same page that this medication was imperative. And as I stated before, the trial court even asked what's expected to change. And the parties agree that it's the medication. The medication was essential here. And as the Jones court found, when the trial court fails to properly exercise that discretion, which is what we're alleging here, by making a conditional finding, that there comes that second problem with, you know, what happens in the converse if he's no longer taking that medication. So here, the court, we're arguing that the court further abuses discretion by denying Mr. Williams his motion to withdraw guilty plea and vacate sentence because here the court has been presented with this information, that Mr. Williams was in fact, or at least he's asserting that, he wasn't taking that medication for over two years. So at that point, we have that converse that came true, that issue that came to fruition. And unless this court has any other questions, the remedy that we're asking for is to reverse and remand for a determination of fitness to plead guilty and then further proceedings. Yes, and at the very least, he should at least get a new sentence in hearing because as the facts show, he's asserting that he wasn't taking his medication. That raises that. But saying you want a sentencing hearing presumes that he was fit to make a plea. Well, so that's correct, Your Honor. So I think this is twofold. So if this court finds that provisional, that conditional fitness order was an abuse of discretion, then we need to withdraw that guilty plea. However, if this court doesn't, then at least that sentencing hearing is problematic because of the facts that he's asserting that he wasn't taking medication. Thank you, Your Honor. You'll have some time after this, Your Honor. May it please the Court. Counsel. My name is Sharon Shanahan, and I represent the people of the state of Illinois. I will continue on the same track as counsel for the defendant and primarily address the defendant's fitness to stand trial. Defendant's entire case revolves around People v. Jones, a case some 16 years old that involves what it says was a conditional order. And not much analysis says that it violated statute, and therefore the judge did not exercise its discretion. Let's start out with the distinctions between Jones and this case. In Jones, the defendant pled guilty almost a year after Judge Bertani Tomczak entered an order saying that he was fit to stand trial on his current medications. A year. The judge that took the plea was an entirely different judge, and he was completely unaware of the first order. Now, you've just... So something in that case that says he was unaware, how do you know he was unaware? The line, they discussed that in the... Excuse me. It's a logical analysis from the evidence. Okay. And... I'm sorry. I'm cold. I think everybody has a cold. But... I was just looking for a Kleenex. That's okay. Go ahead. Anyway, so let's compare the factual basis of Jones to this case. In this case, we start out the day with a fitness error, and we have Mr. Timothy Capps, who had represented the defendant for about two years at that time. And I think it's very, very apparent that Mr. Capps very zealously guarded the defendant's fitness. He thought he was... If he had any doubt about his client's fitness, he made sure that the court knew about it. And at that time, he said it was very highly likely that the defendant had been restored to fitness. He said he had no reservations whatsoever about Mr. Williams' fitness. I believe he is fit to proceed. The trial court also had the August 22nd report of Dr. Mary Hanessian, which it considered. It also had the testimony of Dr. Hanessian. She testified at the fitness hearing that morning. She said that since the report, which was August 22nd, we're in now in October. Since that report, she continued to believe that the defendant was fit to proceed. He was consistently stable. He actually improved. He showed good insight and self-control. And, by the way, in a footnote in my brief, if you want to see the difference in this defendant, in a footnote in the brief, I point out some of the earlier interactions between the defendant and counsel and the court and whatever, and you can see the difference. Here she said he is showing good insight, self-control. He was taking his medicine voluntarily, and that she believed he would continue to take it even if he was released. His responses to the trial court were articulate, showed full understanding. I mean, the questions he's asked, he explained that they were there to have a fitness stand for me. He said Mr. Katz's job was to assist in his defense. He said he understood that he had the right to persist in his plea of not guilty and have a trial. He said the function of the jury would be to determine my innocence or guilty. The trial court's job would be to proceed over the proceedings. This is a defendant that clearly knows what he is doing. Now, the sentencing hearing that counsel for the defendant is so concerned about occurred a month later. One month later, this same attorney, Mr. Katz, who has had no qualms whatsoever about saying, I don't think my client is fit to stand trial, says that the defendant is alert, coherent, and easy to deal with, is capable of understanding everything that's going on as he has ever been during these proceedings. And by that, I mean I'm confident that he is completely fit to proceed to sentencing. Did Mr. Katz represent him when he was on medication? Yes. So he wouldn't represent him back further? Yes. And about two years before this plea, he started representing him. Again, the defendant's allocation at the guilty plea, and even then, before they proceeded to allocation, allocation, excuse me, the trial court says we want to make sure we all understand your state of mind today and the defendant confirmed that he understood. And he even understood that it was totally up to the trial court to determine his sentence. There's also an order at the very end of the guilty plea where the trial court instructs the head of Chester Mental Health to continue defendant's treatment. It gave a period of time. I think it was like four weeks, and maybe this sentencing hearing was five weeks or something like that. There's a slight discrepancy. But basically, the defendant's claim that he stopped taking medication right at his claim two years later, by the way, that he stopped taking medication right after the guilty plea is rebutted by the record because the trial court remanded him to Chester Mental Health for continuing treatment. What about this issue of being conditionally, and I put that in quotes, conditionally fit? Well, again, let's look at Jones and here. Conditionally fit to say a year later you're fit if you're on a medication. You can take that out of this case because if you're fit in the morning, whether you're on medication or not, because you can be fit on medication. I mean, that's very well established. You can be on psychotropic medication and go to trial and plead guilty or whatever. If you're fit, that's all that matters. And he was fit that morning. He was fit that morning. But how do we know that? How do we know he was fit that morning? We know he was fit that morning because his treating psychologist submitted her report to the court. She testified to the court about the timeframe between the report and that day. Did she see him that day? She had been treating him. I know, but I'm talking about that day. I know she submitted her report, and I think her report said that he was on the medication, and he was doing well, and even though there might be some deterioration in his thinking, stress, whatever. But he was on medication. Mm-hmm. So he wasn't on medication at the time he pled, isn't that correct? No, that's not true. Then it's okay. So he was on medication at the time he pled. Yes, Your Honor, he was. He most certainly was. The most that defendant claims, which, as I say, I believe is rebutted by the record, is that he stopped taking medicine after he pled guilty. So in this month in between the guilty plea and sentencing, that's when he's claiming that he stopped taking medication. But, first of all, he didn't claim that at sentencing. He claimed that two years later. Okay, right. And second of all, we do have in the record the trial court telling we're sending him back to Chester Mental Health for continued treatment basically between now and sentencing. I mean, he did not say that, but that's how we know. And did she see him the day of sentencing? Probably not, but she was his treating physician at Chester Mental Health where he was being held. Right, that's what I meant. I only spoke when I said plea. I meant sentencing. She testified in her report that he was fit on medication. He claims at sentencing he was not fit. Two years later he claimed at sentencing he was not fit. Thank you, Ms. Solomon. So you're asking the court to affirm? Yes, Your Honor. We ask that the court affirm the guilty plea, affirm the finding of fitness. Thank you. Counsel, do you have a vote? Just a quick three points. So regardless of what the expert said, regardless of what the attorneys are saying, the ultimate decision is made by the trial court and only the trial court. So, of course, the trial court has to use everything that it has before it before it can make that determination. But regardless of what the expert said, it was ultimately the decision of the trial court to make this conditional finding. Second, I think the fact that this trial court has been the trial court for Mr. Williams throughout actually hurts him more because here the trial court knew that Mr. Williams slipped in and out of fitness repeatedly, that this issue of fitness was a constant and a persistent problem in his case. But at sentencing, while the trial court addressed plea counsel, the trial court didn't address Mr. Williams specifically to ask, hey, are you on your medication still? Hey, are you still coherent, as your attorney is saying? So the trial court does address Mr. Williams, but the court doesn't specifically ask him, are you still on medication, which is so imperative to his fitness. And the last point that I want to make is it's true that it's only been a month from the guilty plea hearing to the sentencing hearing, but we do know that post-sentencing attorney, before post-plea attorney, I think there was an attorney Duffy. Attorney Duffy, at some point after sentencing, raised this issue of fitness again. So at some point between the guilty plea hearing where Mr. Williams is saying that he stopped taking medication and attorney Duffy comes in, there's another reason or another round of fitness issues that pop up. So when Mr. Williams is saying that he stopped taking his medication after the guilty plea hearing, I mean, that's his assertion. And I think the fact that attorney Duffy brings this up again is it supports him, that maybe he did stop taking it, maybe the effects took place slowly or maybe it took place rapidly. But also, as this court knows, the trial court later finds that Mr. Williams is articulate and he was still fit even without medication. So I think it's because of his mental health issues. The doctors go through it a lot where he was bipolar, he had a lot of trauma, he had head trauma, he was in a coma. So all of these things, and I think the trial court noted it, that he might be able to turn it on at some point and sometimes it's worse than other times. So here, I think the fact that he was articulate at the guilty plea hearing and the sentencing hearing is kind of undercut by the fact that sometimes when he's off medication, he's still articulate and he's still maybe able to assist at some point. It's just because of his health issues, mental health issues, it goes back and forth. So unless there's any other questions, we ask that this court reverse the remand, at least for a new sentencing hearing, but our ultimate request would be to withdraw his guilty plea. Thank you.